NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
LESTER D. FAGAN,                    :
                                    :
            Plaintiff,              :        Civil No. 04-5476 (RBK)
                                    :
      v.                            :        **OPINION**
                                    :
MICHAEL J. ASTRUE, COMMISSIONER     :
OF SOCIAL SECURITY,                 :
                                    :
            Defendant.              :
_____ :

**KUGLER**, United States District Judge:

This matter comes before the Court upon appeal by Plaintiff Lester D. Fagan ("Fagan"), pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). For the reasons set forth below, the Court affirms the ALJ's decision.

**I.   BACKGROUND**

Fagan alleges that he is disabled with an onset date of August 14, 2000. He alleges that he has chronic pain syndromes in his neck, back, and left knee, in addition to major depressive disorder, posttraumatic stress disorder, and adjustment disorder.

Fagan's injuries arise from a motor vehicle accident on June 14, 1999. (R. at 26.) Fagan was self-employed as the owner of a bread delivery franchise. (R. at 127-28.) He was driving his commercial vehicle when he collided with a tractor-trailer as it pulled out of a driveway. (R.

at 128.)  He was transported by ambulance to Newcomb Medical Center, where he was treated for a chest abrasion and left knee pain.  (R. at 128).  The hospital took X-rays of his chest, spine, and left knee, which were all negative for fractures.  (R. at 128.)  On June 21, 1999, Dr. Marshall Pressman evaluated Fagan and diagnosed him with acute post-traumatic cervical strain and sprain, acute post-traumatic dorsal strain and sprain, multiple contusions and abrasions, closed head injury with laceration to the lower lip contusion and strain to the left knee, contusion to the anterior chest wall, and suspected right carpal tunnel syndrome.  (R. at 129.)  Fagan was advised to obtain additional X-rays, take anti-inflammatory medication and muscle relaxants, and begin an outpatient physical therapy program.  (R. at 129.)

   Further testing, reevaluations, and consultations with an orthopedic surgeon showed that Fagan had sustained rib fractures, a bone injury to the left leg, a medial meniscus tear, and possible marrow-edema hemorrhage in the left knee.  (R. at 154-55.)  He was seen by various doctors at Delaware Valley Primary Care and Occupational Medicine Associates and at Cherry Hill Orthopedic Surgical Group in 1999 on June 14 (the day of the accident), June 24, July 22, July 30, September 9, October 7, October 14, October 25, and November 29, and then again on January 10, 2000.  (R. at 154-55.)

   After this, Fagan did not return again for treatment until January 12, 2001, stating that he had no medical treatment in the intervening time because of lack of insurance.  (R. at 155.)  When he returned to Dr. Kessler in 2001, the pain in his neck, low back, and left knee was continuing.  (R. at 156.)  He was advised to continue a home stretching program to maintain flexibility and to restrict heavy lifting, twisting, turning, or prolonged driving.  (R. at 156.)  His diagnosis at this point was chronic pain from the rib fractures, chronic strain and sprain injuries of the cervical thoracic spine and lumbar spine aggravating underlying anatomic abnormalities of

degenerative disc disease, demonstration of a mild disc bulge at the L5-S1 region, chronic sprain of the left knee with a bone bruise, and a posterior medial meniscus tear and ACL sprain. (R. at 155.) Dr. Kessler noted in his report on January 30, 2001, that Fagan complained of "difficulty sleeping with nocturnal awakening and complaints of concentration difficulties, depression and irritability." (R. at 156.)

Fagan was treated by Dr. Robert Labaczewski between March 21, 2001 and September 28, 2001. (R. at 159-67, 175-77.) Additional MRI testing of Fagan's back during this time showed a small left paracentral subligamentous inferior disc herniation at L5-S1, a small disc protrusion at T5-T6, disc narrowing with mild disc bulging from T4 through T11, and additional disc bulging in the cervical spine. (R. at 169-74.)

On July 23, 2001, Fagan saw Dr. Steven Valentino, an orthopedist. (R. at 186.) Dr. Valentino noted that Fagan complained primarily of neck pain and also thoracic, low back, and knee pain. (R. at 186.) He noted these symptoms were worse with attempts at activity or prolonged posture and ameliorated with rest. (R. at 186.) He also noted that Fagan denied any other complaints at that time. (R. at 186.) Dr. Valentino recommended pain management with a series of epidurals. (R. at 187.)

Fagan was examined by Dr. T.J. Citta-Petrolungo for the New Jersey Division of Disability Determination Services on April 13, 2002. (R. at 178.) Dr. Citta-Petrolungo concluded that Fagan was suffering from neck pain, back pain, and weakness in his left knee. (R. at 180.) With regard to the knee, Dr. Citta-Petrolungo noted that Fagan was planning on having arthroscopic surgery to repair the knee cartilage, and he was advised to avoid overuse to prevent further strain. (R. at 180.) The doctor also noted that though Fagan reported using a cane for distance walking, he did not bring it to the examination and had walked at least 1,000 feet in

order to get to the exam room.  (R. at 180.)

On April 19, 2002, Dr. Dirk Skinner, a neurologist, evaluated Fagan.  (R. at 229.)  Dr. Skinner noted that Fagan's symptoms had outlasted the normal duration for such symptoms and he had significant functional overlay on examination.  (R. at 231.)  Dr. Skinner concluded that there was no basis for any short-term memory loss from a neurological standpoint and Fagan was not neurologically disabled.  (R. 233.)

On May 2, 2002, Dr. George Glenn, another orthopedist, conducted an independent medical evaluation.  (R. at 296.)  Dr. Glenn reviewed Fagan's medical records and performed a physical evaluation, and concluded that Fagan showed signs of symptom magnification and had reached the maximum medical improvement in his neck, back, and knee.  (R. at 315, 318.)  Dr. Glenn was not a treating physician, and so this opinion was not given substantial weight.

It is undisputed that Fagan was last insured through December 31, 2000 and so in order to be eligible for DIB must establish a disability which began on or before December 31, 2000.  Fagan filed a claim for DIB on April 5, 2001.  The application was denied initially on September 5, 2001 (R. at 21) and on reconsideration on April 29, 2002 (R. at 27).  Fagan requested a hearing, which was held on April 7, 2003 by Administrative Law Judge Daniel W. Shoemaker, Jr. ("ALJ Shoemaker").

After the hearing, Fagan met with other doctors.  Dr. Karen Davenport, a psychiatrist with the New Jersey Division of Disability Determination Services, evaluated Fagan on June 22, 2003.  (R. at 320.)  She diagnosed Fagan with personality change due to multiple head injuries and adjustment disorder with depressed mood.  (R. at 323.)  She opined that Fagan's prognosis was not likely to improve unless he received neuropsychiatric intervention.  Fagan was also evaluated vby Dr. Kona on October 16, 2003.  (R. 324.)  ALJ Shoemaker notified Fagan that he proposed

to enter these reports into the record. (R. at 41.) However, in his decision, he indicated that he gave no weight to Dr. Davenport's report, because it related to an examination performed many months after December 30, 2000, the relevant date for determining disability. (R. at 12.) ALJ Shoemaker also gave no weight to the opinion of Dr. Howard Hammer, a clinical psychologist who treated Fagan beginning on March 5, 2002 and at least through May 31, 2002. (R. at 12.)

ALJ Shoemaker issued an opinion denying Fagan's claim on July 9, 2004. (R. at 6.) The Appeals Council denied Fagan's request for review on September 9, 2004, and ALJ Shoemaker's decision became the final decision of the Commissioner. Fagan filed this action seeking review of the decision on November 8, 2004. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court may not weigh the evidence or substitute its conclusions for those of the fact-finder.").

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Secretary of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d 110, 114 (3d Cir. 1983)).

### III.  Discussion

The Commissioner conducts a five step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner determines whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues to step four to evaluate the claimant's RFC and analyze whether the RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

Here, ALJ Shoemaker first determined that Fagan had not engaged in substantial gainful activity since August 14, 2000. The ALJ next determined that while Fagan's chronic neck, back, and left knee syndromes were severe impairments, they did not meet or medically equal the criteria of any impairment contained in the listing of impairments, specifically considering Listing 1.00 and 11.00 (musculoskeletal system and neurological system impairments). He also determined that Fagan did not suffer from severe major depression, PTSD, or adjustment disorder before December 31, 2000. ALJ Shoemaker next determined that Fagan could not perform any of his past relevant work but had the residual functional capacity ("RFC") to perform the strength demands of sedentary work. Accordingly, he found that Fagan could, on a sustained basis in a work environment, sit for up to eight hours and stand or walk for up to two hours in an eight-hour workday. The ALJ also found that Fagan could lift, carry, push, or pull objects weighing up to and including ten pounds occasionally or a negligible amount of weight frequently. Finally, he concluded that there exist in significant numbers in the national economy

jobs that Fagan is capable of performing.

Fagan argues that ALJ Shoemaker erred as a matter of law by not considering the entire record (particularly the reports of Dr. Davenport and Dr. Hammer) in determining that the pain syndromes in his neck, back, and left knee, in combination, were not severe under the regulations. He argues that he meets the listings for 1.02(A) Dysfunction of Knee, 1.04 Spinal Disorder and 12.04 Affective Disorder and should be classified as disabled. He alleges that the ALJ failed to consider Fagan's exertional limitations in combination with his non-exertional limitations. Fagan further argues that ALJ Shoemaker's finding that he can perform a full range of sedentary work is not supported by medical evidence and is inconsistent with Fagan and his wife's testimony at the hearing. The Commissioner argues that ALJ Shoemaker's decision was supported by substantial evidence and should be affirmed.

A.   Listing of Impairments

Fagan contends that disability was established on the medical evidence alone because he met the requirements under the Listing of Impairments, or in the alternative, his impairments equal the criteria of any impairment listed. 20 C.F.R. § 404.1520(d). To establish disability on the basis of a listed impairment, a claimant must meet all the requirements of that listing. To establish disability by arguing that a condition is "equivalent" to a listed impairment, a claimant must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment. Sullivan v. Zebley, 493 U.S. 521, 531 (1990).

To meet Listing 1.02A, a claimant must have a dysfunction of a joint that prevents the claimant from "ambulating effectively". 20 C.F.R. Pt. 404 Subpt. P App. I § 1.02A. Ambulating effectively is defined as being "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. Pt. 404 Subpt. P App. I §

1.00(b). Ineffective ambulation includes "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." Id. Fagan asserts, and the medical evidence reflects, that he has chronic joint pain and stiffness in his knees. However, substantial evidence supports the determination that this did not prevent him from ambulating effectively. While Fagan asserts that he uses a cane for distance walking, this does not prevent him from ambulating effectively. (R. at 180.) The ALJ did not err in determining that Fagan's knee impairment, though severe, did not meet or equal the requirements of Listing 1.02A.

For impairment from a spinal disorder under Listing 1.04, the claimant must have a listed disorder of the spine "resulting in compromise of a nerve root...or the spinal cord" in additional to another symptom from a list of physical manifestations. 20 C.F.R. Pt. 404 Subpt. P App. I § 1.04. The medical evidence includes MRI testing showing a diffuse bulging disc at L5-S1 and disc desiccation in other places. At evaluations in 2001, Fagan continued to have pain and some restrictions of motion, as well as mild to moderate S1 radiculopathy on the left side with evidence of acute and chronic denervation and mild C5-C6 radiculopathy on the left with evidence of acute and chronic denervation. (R. at 153-77.) The ALJ found that though these conditions were severe, the medical evidence showed that they did not meet or equal the listing requirements of Listing 1.04. Evaluating the medical evidence in comparison with the requirements of Listing 1.04, the Court finds the ALJ's decision to be supported by substantial evidence.

The ALJ also considered Fagan's knee, neck, and back impairments in combination, as he

was required to do.  20 C.F.R. § 1520 (a)(ii).  Again, though ALJ Shoemaker found these impairments to be severe, he found that they did not meet or equal listed impairments so as to direct a finding of disability.  The Court also concludes that this finding is supported by substantial evidence.

> B. <u>Non-Exertional Limitations</u>

ALJ Shoemaker did not consider the evidence relating to major depression, PTSD, and adjustment disorder, finding "no diagnoses, no evidence of treatment and no evidence [of] functional limitations caused by such impairments on or before December 31, 2000."  Fagan contends that the Court "must logically deduce that these limitations existed on or before" December 31, 2000.  He argues that "Dr. Davenport clearly related Mr. Fagan's non-exertional limitations to the [motor vehicle accident] of 1999."  Fagan argues that the ALJ erred in not considering his non-exertional limitations and in not giving substantial weight to the reports from Drs. Davenport and Hammer regarding Fagan's emotional and mental impairments.

The Court disagrees.  An impairment, even an impairment which rises to a disabling level, cannot be the basis for a determination of disability when the impairment arose or reached disabling status after the date last insured.  See <u>DeNafo v. Finch</u>, 436 F.2d 737, 739 (3d Cir. 1971).  The determination of disability before the date last insured must be demonstrated through medical evidence.  <u>Id.</u>; see also <u>Manzo v. Sullivan</u>, 784 F. Supp. 1152, 1156-57 (D.N.J. 1991).

None of the medical evidence from prior to December 31, 2000 includes reference to major depression, PTSD, or adjustment disorder.  The medical evidence from between December 31, 2000 and December 31, 2001 does not include reference to these ailments either.  Dr. Kessler noted in his letter on January 31, 2001 that Fagan complained of "concentration difficulties, depression, and irritability" but did not evaluate these claims or recommend any treatment

options.  (R. at 156.)   Dr. Labaczeski's reports do not mention any of these possible ailments.  (R. at 159-67.)  The first evidence of diagnosis or treatment for mental conditions comes from Dr. Hammer, who first evaluated and treated Fagan in March 2002.  (R. at 234.)  However, even if the ALJ had given substantial weight to Dr. Hammer's letter and Dr. Davenport's report, there is still not evidence that Fagan suffered from these conditions before December 31, 2000.  While Dr. Davenport noted that "claimant is depressed/irritable and reports a change in personality (increased impulsivity [and] aggression) since [the motor vehicle accident]", (R. at 326), these subjective complaints were not corroborated by objective medical evidence.  See 20 C.F.R. § 404.1529(a), (b)  Neither Dr. Hammer nor Dr. Davenport concluded that Fagan had severe mental impairments before the end of 2000.  ALJ Shoemaker noted that he did take into account Fagan's limitations in mental functioning and found that Fagan's abilities to meet the basic mental demands of competitive work was only slightly limited during the period at issue.  The ALJ's determination that Fagan did not have a severe mental or non-exertional impairment before December 31, 2000 is supported by substantial evidence.

  C. Residual Functional Capacity and Ability to Work

  Fagan argues that the ALJ erred in determining that there are jobs Fagan can perform.  Specifically, he challenges ALJ Shoemaker's findings that prior to December 21, 2000 Fagan could "do the prolonged sitting contemplated in the definition of sedentary work,"  could "sit up to 8 hours or stand/walk for up to and including 2 hours in and 8-hour workday," and could lift, push, carry, or pull up to 10 pounds occasionally and negligible amounts of weight frequently.  Fagan argues that these findings are baseless.  He largely relies on his testimony and the testimony of his wife, Donna, at the hearing to argue that his physical limitations prevent him from engaging in sedentary work.

An ALJ must corroborate subjective complaints regarding a disability with objective medical evidence. 20 C.F.R. § 404.1529(a). However, an ALJ cannot "supplant[ ] the opinions of a claimant's treating and examining physicians with [the ALJ's] personal observation and speculation." See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). A claimant's subjective complaints of pain must be considered but will not themselves constitute disability in the absence of objective medical evidence. A claimant "must show that he has a condition which reasonably could be expected to produce the alleged symptoms that are the cause of his inability to work." Williams, 970 F.2d at 1186.

In making his finding that Fagan was capable of sedentary work, the ALJ concluded that Fagan's testimony was not fully consistent with the medical evidence and that the medical evidence suggested that the intensity, persistence, and functionally-limiting effects of Fagan's symptoms only minimally affect his ability to engage in sedentary work. Fagan's subjective complaints include a serious attention span deficit (R. at 373), numbness in the entire thoracic region (R. at 376), inability to sit for more than a few minutes (R. at 377), painful breathing (R. at 377), and inability to hold his head up (R. at 393). The medical evidence, at least as of 2001, shows disc herniation at L5-S1, small protrusions and disc bulging, some spondylitic changes in the thoracic spine, and pain and loss of strength in the left knee. (R. at 180.). Dr. Skinner concluded that Fagan's symptoms had outlasted the normal duration for such symptoms and were associated with significant functional overlay. (R. at 232.). Dr. Citta-Petrolungo noted that the straight leg raise (a measure of back problems) was within normal limits and that Fagan had a full range of motion and normal strength in the arms and legs. (R. 179.) Dr. Citta-Petrolungo concluded Fagan had lost strength in his left knee and primarily advised avoiding overuse. (R. 180.) Dr. Kessler advised in January of 2001 that Fagan should work on a home-stretching

program to maintain flexibility and should restrict heavy lifting, twisting, turning, or prolonged driving. (R. at 156.) No physician opined that Fagan was disabled or could not engage in any work at all as of December 31, 2000. There is substantial evidence to support ALJ Shoemaker's decision not to not credit Fagan's subjective claims.

Fagan refers also to a Physical Residual Functional Capacity Evaluation. This is in the record as part of a report by a Dr. Kona, for the New Jersey Division of Disability Determination Services, from November 16, 2003. (R. at 327.) This report appears to be incomplete. It does include a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form. ALJ Shoemaker mentions this report in his discussion of the record but did not indicate that he gave it substantial weight. It is not clear whether Dr. Kona examined Fagan or what evidence was used to fill out the form. Moreover, Fagan appears to have objected to the inclusion of the consideration of this incomplete report. (R. at 43.) The ALJ did not consider Dr. Kona a treating physician or give substantial weight to this evidence, a decision the Court agrees with.

### D. Vocational Evidence

Fagan argues that ALJ Shoemaker erred in not hearing the testimony from a vocational expert at the hearing, not mentioning specific vocations able to be performed, and relying on out-dated and unreliable listings for sedentary work. The ALJ agreed that Fagan could not perform any of his past relevant work on December 31, 2000 but found other jobs existing in significant numbers in the national economy Fagan could do.

The ALJ properly found that Fagan was a younger individual, with education beyond high school, whose previous skilled and semi-skilled work experience was not transferrable. ALJ Shoemaker also found that within the limits of Fagan's severe but not disabling exertional impairments, he could engage in sedentary work.

Testimony from a vocational expert was not required in this case. The ALJ found that Fagan had no mental or non-exertional limitations before December 31, 2000, and as a result he could use the medical-vocational grids to establish the existence of a significant number of jobs in the national economy. 20 C.F.R. Pt. 404 Subpt. P App. 2; see Sykes v. Apfel, 228 F.3d 259, 269 (3d Cir. 2000); Heckler v. Campbell, 461 U.S. 458, 467 (1983) (holding that reliance on grids is permissible for claimants with exertional impairments). Likewise, because the use of the grids was permissible, the ALJ did not need to indicate specific jobs appropriate for Fagan within the range of sedentary work. See 202 C.F.R. Pt. 404 Subpt. P. App. 2 § 201.00(a) ("Approximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy.") Because the ALJ also properly found that Fagan could engage in sedentary work, his decision under Rule 201.21 or 201.28 that Fagan was not disabled is supported by substantial evidence.

**IV.     Conclusion**

Because ALJ Shoemaker's decision is supported by substantial evidence in the record, this Court affirms his decision that Fagan was not disabled on December 31, 2000 and is therefore not entitled to DIB.


Dated:   December 21, 2007                       /s/ Robert B. Kugler
                                                 ROBERT B. KUGLER
                                                 United States District Judge